ROBERT LOCKHART AND ANOTHER v. JANE WHITE AND OTHERS.

The order of the Probate Court is not required to the validity of a payment by an administrator, of a claim against an estate, which has been allowed and approved ; if the payment be proper in itself, and such as the Court would on application decree, it cannot be impeached for the want of a previous order to that effect.

Where an administrator makes payment to one or more creditors, of a portion or the whole of their claims, without order of the Court, and not on other claims of the same class or degree, he does not thereby render himself per-sonally liable for the debts unpaid ; but, in the settlement of his account, he will be entitled to credit for such amounts only as shall be found to be due and payable to the creditors so paid by him, not to exceed the amount actually paid.

Where a deceased person leaves a child, his creditors can have no interes in resisting the allowance to his widow and child, on the ground thatt the alleged widow was not the lawful wife of the deceased, because, it seems, the child would be entitled to the same allowance.

An incontrovertible answer to the position and argument of the appellants (that the reputed widow had not been the lawful wife of the deceased, and was therefore not entitled to the widow's allowance, to the extent of which the plaintiffs were seeking to charge her as administratrix, for a

devastavit,) is this : that Allsbrooks left one child by his wife at the time of his death, and whether the widow be or be not entitled to the allowance under Arts. 1153 and 1154, the child certainly is, and could claim the whole for itself, to the exclusion of the plaintiffs and all others, except those claiming for funeral expenses and those of the last sickness.

Though the law presumes a continuance of life, yet where this presumption necessarily involves a presumption of crime, and comes in conflict with the presumption of innocence, the former which is the weaker yields to the latter, and the party affirming that an individual is not dead will be bound to prove it.

The right to impeach the decree of the County Court ordering the allowance (to the widow and children) and the payment under that decree, by action on the bond, charging waste against the administratrix and her sureties, admits of serious question. (In this case the widow was administratrix.)

In this case the decree, if not conclusive in itself, is made so by the acts of the plaintiffs. Their attorney in fact resided in the county where the succession was opened ; was notified of the application of the administratrix to resign, and was present in Court at the settlement of her final account, which passed without objection on his part; at least none appears from the record. Such acquiescence, continued as it was for nearly two years, is conclusive against the right of the plaintiffs to disturb collaterally the decree, or the allowance under it to the widow and children.

Where an administrator has converted property of the estate before obtaining letters of administration, his only liability is to account for it as adminis-trator, or to pay the value thereof in a suit on his bond ; but not to pay all the debts of the estate.

See this case for evidence which did not entitle a creditor to judgment in a suit on the bond of an administratrix.

Appeal from Limestone. Tried below before the Hon. Henry J. Jewett.

Suit Sept. 8, 1851, by appellants against the appellees, on the bond of Jane Allsbrooks, (now Jane White) as administratrix of Wm. H. Allsbrooks, deceased. The petition alleged maladmin-istration, and appropriation of the assets of the estate by the administratrix, in general terms ; an amendment specified one horse of the value of $150, and a house and lot in the town of Springfield, of the value of $400. The claim of the plaintiff had been allowed by the administratrix, and was for the sum

of $882 60. The administration bond was dated March 27th, 1848. The plaintiffs alleged that the said Jane was not the lawful widow of said Allsbrooks, inasmuch as at the time of her pretended marriage with said Allsbrooks, a former husband of hers, one Charles Waggoner, from whom she had not been divorced, was still been living. The answer denied all and singular, &c.

The plaintiff introduced in evidence his claim ; the bond ; admission that said Jane was appointed administratrix as alleged, at March Term, 1848, of Probate Court of Limestone county ; the inventory of the estate, filed September 25th, 1848 ; exhibit at first Term after twelve months, filed May 1, 1849 ; petition for leave to resign and final account filed October 31, 1849 ; deposition of John Welch proving marriage of said said Jane to Charles Waggoner, by reputation, that they lived together as man and wife a few months, then separated and Waggoner left the country ; witness did not recollect the time of the marriage, was not present ; did not know whether Waggoner was living or dead, nor when he last heard of him ; deposition of John H. Welch, proving that said Jane married Allsbrooks in 1846 ; did not know whether Waggoner was living or dead, nor when he last heard of him ; then called James M. Love who testified that by common report said Jane was married to said Waggoner in the latter part of 1840 or first of 1841 ; did not live long with her ; separated from her ; witness heard of him there afterwards in Eastern Texas, and about a year after that in Western Texas ; marriage license of said Jane and Allsbrooks, returned executed Mar ch 5th, 1846. Here plaintiff's closed.

The inventory showed store goods appraised at $713 57 ; real estate, to-wit : house and lot, late residence of deceased, $100 ; half lot, with store-house and stable, $125 ; horse, $65 ; yoke oxen, $16 ; cash on hand $103 50 ; notes and accounts, $957 68 ; household and kitchen furniture, $50 ; total $2000 56. Here followed as part of the inventory, a statement of what

purported to be " amount of sales of the above property made in private.," cash $82, accounts $98 12—$180 12.

The exhibit at the end of a year showed the following claims allowed within the year : R. Lockhart & Co., account, $882 60 ; Lott L. Godfrey, note, $220 ; James M. Davis, account, $53 81 ; Cook and Tate, account, $125 ; A. J. Ashton, note, $70 ; allowed after a year, J. W. Simmons, account, $51 50 ; total presented within the year $1451 41. In same exhibit the administratrix stated amount of proceeds of sales, $643 46 ; amount taken by herself, in goods, $113 34 ; one horse appraised at $65 ; yoke oxen, $16 ; cash $21 50 ; amount received, including cash on hand at time of inventory, $254 03 ; paid A. J. Ashton, on note, taken in full payment, $35 ; L. L. Godfrey, on note, $95 54.

The petition for leave to resign, and final account, showed same statement of claims against the estate ; that the property of the estate had been disposed of as follows : sales $664 97 ; to widow and child of deceased, part in lieu of statutory allowance, homestead lot in Springfield, $100 ; half-lot in Springfield, store-house and stable, $125 ; yoke oxen and horse, $81 ; household and kitchen furniture, $50 ; total allowance, $356 ; Total cash on hand at date of inventory, and since received, $287 97. Settled with J. B. Hardin, (first time this claim appeared.—Reps.) $88 71 ; paid funeral expenses, $25 ; T. A. Bailey, for services, $8 45 ; paid for advertisement, $3 50 ; Court fees, $7 10 ; L. L. Godfrey, $95 54 ; A. J. Ashton, $35 ; total, $264 30 ; Court fees now due, $27 75. The whole estate now consists of notes and accounts. All which is respectfully submitted, &c.

The defendants introduced the final account of the administratrix as re-stated and confirmed by the Chief Justice, as follows : Money on hand at time of administration, $103 50 ; amount of sales, $643 46 ; goods, $9 84 ; notes and accounts on hand at time of administration, $957 68 ; homestead, $100 ; half-lot, store house, &c., $125 ; horse, $65 ; yoke oxen, 16 ; total $2,020 48.

Credits as follows : amount paid out, same items as in the account, with the addition of, to J. M. Davis, $53 81 ; total paid out, $318 11 ; add allowance for year's support, $150 ; statutory allowance, $256 00 ; Court expenses now paid, $19 45 ; commissions on $335 90, $33 36; total $776 93 ; and further credit for the following notes and accounts delivered up to the Court to-wit : here followed a list of same, amounting in the aggregate to $1235 12 ; then followed an item of "incidental expenses'" $18 43 ; total credits $2020 48. "And it appearing to the Court that said administratrix has accounted for all said estate, according to law, it is ordered by the Court, that said papers and effects be delivered over into the hands of R. R. Smith, Clerk of this Court, and, that said administratrix, upon complying with the foregoing order, be permitted to resign her trust, and be discharged from further responsibility."

The defendants then introduced a statement of the notes and accounts, showing the dates of their accrual or maturity, it did not appear which ; but it did appear, that even if the dates were the dates of maturity, only a very trifling amount could have been barred by limitation at the date of the resignation of the administratrix.

The defendants then introduced the order discharging the administratrix marked I. (The copy of this order was not in the transcript.—Reps.) They then introduced the order of allowance, to which plaintiffs objected, &c. Its date did not appear. It was for the benefit of the widow and only child of the deceased, and allowed $150 for year's support of widow and child ; the homestead $100 ; household and kitchen furniture $50 ; in lieu of other articles, the half lot, store-house and stable, $125 ; the horse $65 ; yoke oxen $16 ; also, the further sum of $75 ; total $581.

The defendants called J. R. Henry, who testified that he was the attorney in fact for plaintiffs, and lived in Limestone county, and that Godfrey, one of the creditors, had received a

portion of his debt, and at the same time witness refused to receive notes from the administratrix in payment of plaintiff's claim ; did not recollect why ; on cross-examination stated, that the said Jane collected the property and kept the storehouse open, sold and permitted goods to be sold to the amount not known ; re-examined, witness stated that he had acted as agent of plaintiffs during the time said Jane was administratrix ; was notified of her application to resign, and was present in Court when her account was settled.   Another witness testified that John Welch and John H. Welch, witnesses for plaintiffs were one the uncle and the other the cousin of the said Jane.

The Judge instructed the jury, at considerable length, mainly in the terms of the Opinion of this Court.  The instructions refused are sufficiently stated in the Opinion.

Verdict and judgment for the defendants.   Motion for new trial overruled, &c.

*Barziza*, for appellants.

*Prendergast*, for appellees.

HEMPHILL, CH. J.   The assignments of error are :—
1st.  In refusing charges asked by plaintiffs.
2d.  In the charge to the jury.
3d.  In refusing to grant a new trial.
4th.  In giving the charges asked by defendant.
5th.  Other irregularities and errors on the record.

The fourth assignment may be disposed of with the remark, that no charges were asked by the defendants, and consequently there is no ground for the assignment.

The first alleged error noticed by counsel for appellants, in his argument, is the refusal to give the third instruction asked by plaintiffs below (who are appellants in this Court).  This was to the effect, that if the jury believed from the evidence,

that the administrator of W. H. Allsbrooks paid any debts due by the estate without an order of the County Court, she was responsible upon her bond for all the debts of the deceased.

The appellant insists that under Art. 1192, the mode of payment of debts of an estate is prescribed, and payment without an order of the Court makes the administrator responsible for all the debts.

This view of the law is believed to be unsound. The Art. 1187 declares the order in which debts shall be paid ; and by Art. 1189, the administrator, when he shall have funds of the estate, is required to pay. Under Art. 1191, he is required, at the first Term after the expiration of twelve months, to file an exhibit of the claims against and condition of the estate. Upon this exhibit, the Court, under Art. 1192, acts and decrees payment in proportion to the solvency of the estate. Some claims clearly may be paid by an administrator, without the delay of twelve months or an order of the Court, as, for instance, funeral expenses, those of the last sickness, of administration, &c. These are first in rank, and none others can claim a *pro rata* distribution with them. The law points out the order in which debts shall be paid.

Where there is danger of insolvency, the administrator, for his own safety, should delay until the *pro rata* due each creditor can be ascertained. But the order of the Court is not requisite to the validity of a payment. If this be proper in itself, and such as the Court would on application decree, it cannot be impeached for the want of a previous order to that effect. And if the payment be not in due order, that is if payment be made to one or more creditors, of a portion or the whole of their claims, (as is charged to the case here,) and no such payment is made on other claims of the same class or degree, this would not render the administrator liable for the debts unpaid out of his own property. The County Court might refuse to allow such payment, in the account of the administrator, and make him liable to the extent of the assets

thus misapplied ; but the administrator could claim to stand in the place of the creditors paid by him, and receive the proportion due to them.    This is believed to be the rule in Equity, where distribution of an estate among creditors is decreed on a Creditor's Bill, and there is a close analogy between the distribution under such decree and under the provisions of our Statute.   (2d Wms. on Ex'ors, 891 note q.)    There was no error in refusing the charge, as asked by plaintiffs.

The next charge asked by plaintiffs and refused by the Court, was to the effect that if the jury believed from the evidence, that the marriage of Jane Waggoner with W. H. Allsbrooks took place within seven years after separation and last authentic accounts of Waggoner, such marriage is a nullity, unless it be proven that Waggoner was dead or divorced at the time of the marriage with Allsbrooks ; and she was not entitled, as the widow of Allsbrooks, to any allowance out of his estate ; and the amount so allowed is assets of the estate, and liable for the debts of the plaintiffs. In relation to this subject, the Court, in the general charge, instructed the jury, that absence of a person beyond sea for seven years raised the presumption of his death, but that under the facts of this case, the second marriage of the defendant with Allsbrooks being on license and regularly celebrated, and the subsequent recognition of her by the County Court as his lawful widow, raised a presumption in favor of the legality of the marriage, which could be rebutted only by a preponderance of evidence showing that her first husband was alive and within the Republic or State within that period, and that she knew such fact at the time of her second marriage.

An incontrovertible answer to the position and argument of appellants is this : that Allsbrooks left one child by his wife at the time of his death, and whether the widow be or be not entitled to the allowance under Arts. 1153, 1154, the child certainly is, and could claim the whole for itself, to the exclusion of the plaintiffs and all others except those claiming for

funeral expenses and those of the last sickness. The amount of the allowance is beyond the reach of creditors, and if the subject of contest at all, it can only be between the mother and child. But it is not admitted that Mrs. White was not the lawful wife of Allsbrooks, and not entitled to her share of the allowance as his widow. She had been separated from Waggoner, her first husband, five years before her marriage with Allsbrooks. There was no proof that she had any knowledge of his existence. There was but one witness who had heard of him since the separation. He heard of him once in Eastern and once in Western Texas. Though the law presumes a continuance of life, yet where this presumption necessarily involves a presumption of crime, and comes in conflict with the presumption of innocence, the former, which is the weaker, yields to the latter presumption, and the party affirming that an individual is not dead will be bound to prove it. Thus on a question of settlement, where a woman twelve months after her first husband was last heard of, married a second husband and had children by him, it was held on appeal to the Sessions, that the burthen of proving that the first husband was not dead at the time of the second marriage, lay upon the party objecting to that marriage. (1 Cowen v. Hill's notes, 643 ; Rex v. Inhabitants of Twyning, 2 Barn. & Ald., 386 ; Yates v. Houston, 3 Tex. 449.) There is no evidence that Waggoner was heard of within twelve months (though that exact term is not necessary to raise the favorable presumption) prior to the marriage with Allsbrooks, and under the rule established in the above case, the continuance of the life of Waggoner will not be presumed. The second marriage was consequently lawful and valid.

There was no error in refusing the charge asked, questioning the legality of Allsbrooks' marriage, or the rights of his widow as such to the allowance under the Statute ; and if there was any error in the main charge on that subject, it consisted in this, that it was not sufficiently favorable to the

defendant, Mrs. White ; and consequently it operated no prejudice to the plaintiffs. Certainly the facts of the regularity of her marriage with Allsbrooks, and the subsequent recognition of her by the County Court as his widow, were circumstances which fortified and strengthened the presumption of her innocence.

The right to impeach the decree of the County Court ordering the allowance, and the payment under that decree, by action on the bond charging waste against the administratrix and her sureties, admits of serious question. The subject is peculiarly within the cognizance of the County Court. The right of the widow is one of the facts adjudged in making such allowance, and ordinarily the decree of a Court having jurisdiction cannot be impeached in a collateral action. How far this rule would operate to support such allowances generally, need not be determined. In this case the decree, if not conclusive in itself, is made so by the acts of the plaintiffs. Their attorney in fact resided in the county where the succession was opened ; was notified of the application of the administratrix to resign, and was present in Court at the settlement of her final account, which passed without objection on his part ; at least none appears from the record. Such acquiescence, continued as it was for nearly two years, is conclusive against the right of the plaintiffs to disturb collaterally the decree or the allowance under it to the widow and child.

The sixth charge asked by plaintiff, and refused by the Court, was to the effect that if the administratrix, on the sale of property of the estate, failed to take notes with solvent security, she is responsible for the notes thus taken.

This, as an abstract proposition, was sound, and in conformity with Art. 1181, Hart. Dig.

But it was not applicable to the facts of the case, and was properly refused. There was no allegation or proof that insufficient security was taken on sales by the admin-

istratrix. The legal presumption is that she discharged the duty of her trust until the contrary is shown by proof.

The seventh charge asked by plaintiffs is with respect to the responsibilities Jane White may have incurred by the private sale of some of the property of the estate prior to administration. Not admitting that such act on the part of the widow or heir of an estate, would subject them to the payment of all the debts, unless they could make proof of the exact amount which was sold, it is sufficient to say that in this case the admistratrix accounted for the property sold at private sale or appropriated to her own use. At least there is no proof to the contrary. The presumption is for her, unless rebutted by evidence ; and even then it is believed she could be made liable only for the amount sold or consumed.

Upon the whole it appears, that though an allowance was made to the widow and child for one year's support, and for the homestead and other articles of property exempt from execution under Arts. 1153, 1154, yet this was small in amount, and the creditors, instead of complaining, should be satisfied that no larger sum was demanded or decreed. The aggregate amount did not much exceed five hundred and fifty dollars. This was but a scant allowance for a year's support and for a homestead guaranteed by the Constitution, for two thousand dollars, and for the exempted articles under the act of 1839 ; and by mistake in the statement of the final account, she lost the benefit of about one hundred and fifty dollars, the credit for the allowance being stated at only four hundred and six dollars.

It appears also, that she made a reasonably fair showing of the condition of the estate and of her administration, in her exhibits and accounts as finally stated ; and though there are partial or entire payments on a few claims amounting altogether to three hundred and eighteen dollars 11-100, yet some of these have legal priority. Whether any of them were for the service of physicians does not appear. The amount paid on

Early v. Sterrett.

claims of the same class with that of plaintiffs, is not precisely known. Of this small sum the plaintiffs were in strictness entitled to a *pro rata;* yet it must be remembered that the agent of plaintiffs was tendered a partial payment in notes; that the account of the administratrix was adjudicated and approved by the County Court; that the agent was present and made no objection; that she, on settlement, returned and delivered up a large amount of notes and accounts, amounting to more than one thousand dollars. There is no evidence that these were worthless or might not have been made available, had administration *de bonis non* been issued. Upon all the circumstances and facts in proof, it cannot be maintained that the verdict was not supported by evidence, or that there was any such error in the instructions, prejudicial to the plaintiffs, as would entitle them to a reversal. The judgment is ordered to be affirmed.

Judgment affirmed.