| 49 | 705 |
| 76 | 71 |
| 49 | 705 |
| 84 | 411 |

## HARRIET A. AMES v. WILLIAM H. HUBBY ET AL.

1. SAN JACINTO DONATIONS—ESTATE CONVEYED—STATUTE CONSTRUED.—In view of the object contemplated, and the language used in the act of December 21, 1837, "granting lands to those who were in the battle of San Jacinto, and other battles," (Paschal's Dig., 4059–4065,) this court cannot hold that only a life estate is granted to the party obtaining the grant, with a vested remainder in fee to his heir. Said act provides that "the lands granted by this act shall not be subject to sale or alienation, mortgage or execution, during the lifetime of the person to whom such warrant or patent shall be granted." (Paschal's Dig., 4062.)

2. SAME—RESTRICTIONS ON SALE COULD BE REPEALED.—It was competent for the government, in making a donation, to incorporate a condition restricting alienation. The act of December 21, 1837, granting donations, &c., only restrained sale or alienation during the lifetime of the grantee. He could devise or bequeath it as any other property owned by him. The presumptive heir, therefore, took no estate in the donation in the lifetime of the grantee.

3. SAME.—The Congress, therefore, had the right to repeal the condition against alienation, (Paschal's Dig., 4066,) and said repeal authorized the sale and alienation of such donations by the grantee.

4. DONATION NOT COMMUNITY PROPERTY.—Such donation being a

45

gift, and not upon onerous title, was the separate property of the grantee.

5. APPROVED.—Fisk *v.* Flores, 43 Tex., 340, approved.

6. LEASE A VIOLATION OF LAW AGAINST SALE.—A lease for ninety-nine years, made by the grantee of such donation land warrant prior to the repeal of the condition restricting alienation, was void.

7. RATIFICATION.—A deed for the certificate, upon the same consideration on which the lease was made, executed subsequent to the removal of the condition against alienation, passed title to the certificate.

APPEAL from McLennan. Tried below before the Hon. X. B. Saunders.

The case was submitted under rule 47, upon an agreed statement, as follows:

1. Plaintiff and S. C. Page were lawfully married February 14, 1829.

2. Joseph Page, the only issue of said marriage, was born December 29, 1830.

3. A San Jacinto donation certificate for 640 acres of land was issued to said S. C. Page and his heirs December 15, 1838, and was located on the land in controversy in 1847.

4. Plaintiff and S. C. Page were divorced, by decree of the District Court of Harris county, May, 1840.

5. Plaintiff raised and educated Joseph, and neither plaintiff nor Joseph received any alimony or other assistance from said S. C. Page at or after said divorce.

6. Plaintiff married Charles Ames on August 10, 1842.

7. S. C. Page leased said certificate to Aiken for ninety-nine years, renewable forever at one cent per year, November 13, 1846.

8. Patent issued to S. C. Page on February 12, 1847. The patent grants to said Page and his heirs forever 640 acres of land, leaving out the term "assigns," and incorporating in the body of the patent "this grant * * * shall not be subject to sale, alienation, mortgage, or execution during the lifetime of S. C. Page, hereby relinquishing to him, the said S. C. Page, and his heirs forever," and here again leaving out

the term "assigns." The same limitations and restrictions were also incorporated in said certificate. (Paschal's Dig., 4062.)

9. Aiken deeded the land to defendant Hubby on October 21, 1852, and all the other defendants hold under Hubby.

10. S. C. Page, in order to effect the object and intent of the lease of November 13, 1846, and without any new consideration, deeded the land to Aiken on May 24, 1853.

11. S. C. Page died in 1854, leaving Joseph his sole heir.

12. Joseph Page died February 2, 1855, leaving plaintiff his sole heir.

13. Charles Ames, second husband of plaintiff, died February 23, 1866.

14. Notice of the character of the grant and the restrictions and limitations in the patent admitted.

15. This suit was filed March 23, 1875, to recover the 640 acres of land so located and patented by virtue of said donation certificate in McLennan county, as described in said patent.

*James C. Walker*, for appellant.

I. The certificate and patent conferred a life estate upon S. C. Page, with a vested remainder in fee in his son Joseph. (Paschal's Dig., 1400, 4059–4065, 4067, 4068; 1 Wash. on Real Prop., secs. 37, 45; Hall v. Tufts, 18 Pick., 455; Bradley v. Peixoto, 3 Ves. Jr., 325; Bufford v. Holliman, 10 Tex., 573; Hancock v. Butler, 21 Tex., 812; Warnell v. Finch, 15 Tex., 165.)

II. If we are wrong in the above proposition, then plaintiff claims that said certificate was community property, and consequently plaintiff is entitled to half the land upon such terms as shall be deemed equitable. (Chapman v. Allen, 15 Tex., 283; Mitchell v. Marr, 26 Tex., 329; Lot v. Keach, 5 Tex., 396; Forbes v. Dunham, 24 Tex., 612; De Blane v. Lynch, 23 Tex., 25.)

*S. H. Renick*, for appellees.

I. The prohibition of alienation contained in San Jacinto donation warrants, being contrary to the general policy of the country, must be strictly construed, and does not prohibit a lease.

II. If the prohibition did extend to a lease, then the inhibition against alienation was removed by the act of April 29, 1848, and the acquiescence of Page up to the time of his death would amount to a ratification. His retaining the purchase-money without complaint is itself a ratification. (Paschal's Dig., art. 4066.)

III. The deed of Page to Aiken is a valid transfer of the land after the inhibition against alienation was removed.

IV. A San Jacinto donation was, as its name imports, a gift made after the services were rendered, and was a gratuity, and so never was community property, but was property acquired by gift. (Paschal's Dig., art. 1059; Hubbard *v.* Horne, 24 Tex., 270; Causici *v.* La Coste, 20 Tex., 269.)

*J. C. Walker*, for appellant, in reply, cited and discussed Thompson *v.* Cragg, 24 Tex., 595; United States *v.* Gratiot, 14 Pet., 526; Griffin *v.* Chubb, 7 Tex., 610; Walton *v.* Cotton, 19 How., 358; Roan *v.* Raymond, 15 Tex., 78; Eastland *v.* Lester, 15 Tex., 98; Soye *v.* Maverick, 18 Tex., 101; Polk's Lessee *v.* Wendall, 5 Wheat., 308; Sampeyreac *v.* United States, 7 Pet., 222; 8 How., 417; Keys *v.* Mason, 44 Tex., 144; Springfield Bank *v.* Merrick, 14 Mass., 324; Brown *v.* Christy, 27 Tex., 76.)

MOORE, ASSOCIATE JUSTICE.—The first proposition urged by appellant for the reversal of this judgment is, that the certificate and patent for the land in controversy, which were issued to S. C. Page under the act of December 27, 1837, "granting lands to those who were in the battle of San Jacinto and other battles," gave to said Page merely a life estate, with a vested remainder in fee to his heir.

We, however, are unable, after a critical examination of the statute, to find anything, either in the evident object and purpose of its enactment or the language in which it is couched, to warrant such a construction; and we are quite sure, although hundreds of titles are held under deeds from the patentees of certificates issued in virtue of it, this is the first time this court has been asked to give it the construction insisted upon by appellant. We think it would be an unwarranted reflection upon the titles purchased from the original grantees since the act of March 2, 1848, authorizing the alienation of these certificates and the lands acquired under them, to recognize the objection as worthy of serious consideration or discussion.

It would certainly be a singular conclusion to suppose that it was the object of this act to give a more enlarged and beneficial estate to the heirs, whether direct or collateral, no matter how remote, than to the immediate object of its bounty, and whose gallant and heroic service was intended to be commemorated. It is quite true, as counsel insists, that the right of free and unlimited alienation is one of the most important incidents of a title in fee-simple. (1 Wash., sec. 37, p. 67.) But it certainly does not follow that the government, if it sees fit to do so, might not, when making a donation, restrict or limit the exercise of this incident to the estate. If not, it must follow, from the ingrafting of this restriction in the act, that either the donation or the condition should be held void. In either event appellant's action must fail. But the act does not absolutely and in all respects restrict the grantee from alienating the land: it only restrains his doing so by sale or alienation during his lifetime. He certainly has the right to devise or bequeath it, as any other property which he owns. It results, as a necessary sequence, from the very nature of his estate, that his presumptive heir takes no estate, either contingent or vested, in the certificate or the land acquired under it in the lifetime of the donee. And we may just as well here say, that it was unquestionably

within the power of the government to repeal the inhibition against sale or alienation, as by doing so it in no way affected any vested right of heirs or any one else.

2. Appellant's second proposition is, that a donation certificate, if the grantee is a married man, is community property.

It is a fundamental proposition, that community property is that acquired by husband or wife by onerous title; while that which is acquired by either of the spouses by gift, devise, or descent is the separate property of the heir, donee, or devisee. Now, the very language of this statute imports a direct gift. It was not a grant in fulfillment of an antecedent promise or undertaking, as was the fact in the case of Goldsmith *v.* Herndon, 33 Tex., 705. Compensation for the service performed by Page was provided for in other laws, under which he no doubt received the remuneration in land and money to which he was justly and legally entitled by this statute, which was enacted nearly two years after the occurrence of the memorable events in commemoration of and as a manifestation of public gratitude for which this donation was bestowed upon the living participants' in them, and the heirs of such as had been killed. To the former, at least, it was intended and received as of far greater import as an honorary token than for its intrinsic value.

. But even had the grant of these certificates been made to remunerate those to whom they were issued for services rendered, they would still be separate property of the donee. In the case of Fisk *v.* Flores, 43 Tex., 340, we had occasion to examine this subject somewhat at length, and we found it laid down by the highest authority, that a donation, in remuneration or compensation for services by one of the spouses, is not a part of the community property. Says Eschriche, 367: "Remunerative or compensatory donations, which are made to one of the consorts for his or her individual merits, form no part of the community estate, and that which the husband acquires by military service, and the

rewards bestowed upon him by the government for such services, is his separate property."

It may be, as appellant insists, that the privations and hardships endured by the wives of the gallant soldiers to whom these certificates were donated, gave them as strong a claim upon the gratitude of the country as the service rendered by their husbands; and, as a general rule, this, no doubt, is beyond question. But this fact does not warrant the court in giving the statute a different construction from that which its plain language and the well-established rules of law require. It was a matter which addressed itself to the Legislature, and not to the court. But whether appellant was enduring the privations and hardships so glowingly portrayed by her counsel, and which, as we have said, in most cases justly entitled the noble and devoted wives of the participants in these battles to a like recognition of their self-sacrifice and patriotic devotion, to have shared equally with the heroic soldiers who had won for themselves and their country immortal fame in the honors and rewards bestowed upon them by a grateful country, is not shown by the record. History as well as the records of this court show that such was not the fact in all cases. On the contrary, in rare and exceptional instances, we regret to say, their moral right to share in the donation bestowed by the government upon their husbands in commemoration of their gallantry, was infinitely less than their legal claims to do so, even when we hold them to the strictest letter of the statute. (See Lewis *v.* Ames, 44 Tex., 319.)

3. The lease of the certificate was obviously an attempt to evade the inhibition at the date of the lease against its alienation, and was therefore absolutely void. Had Page not given a deed for it after the repeal of the section of the statute prohibiting the sales and alienation of such certificates, appellant would have been entitled to a recovery as the heir of her son, Joseph Page. But it appears from the agreement of the parties that he made an absolute deed for

the land after he was authorized to alienate it. That this deed was made upon the same consideration for which he gave the void lease, is of no moment. If Page, who alone had any right to or interest in the land, was willing to convey it in consideration of the money which had been previously paid him, it was a matter of no consequence to any one else.

There being no error in the judgment, it is affirmed.

AFFIRMED.