Thomas L. Nixon v. Wichita Land and Cattle Company.

No. 7262.

1. **Bounty Land Warrants — Community Property.**—Bounty land warrants granted under section 10 of the Ordinance of December 5, 1835, offering bounties for volunteer service, are acquired by onerous title, and are community property if granted to a married man.

2. **Community Property — Statute.** — The statute provides (Pasch. Dig., art. 4638; Rev. Stats., art. 2853), that "all of the effects which the husband and wife may possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved." Upon the death of the husband, therefore, all property held by him belongs one-half to his widow and one-half to his children unless otherwise shown.

3. **Presumption of Regularity of Marriage.**—Every intendment of law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular and whatever the form of the proofs, the law raises the presumption of its legality—casting the burden of proof that it is illegal and void upon the party objecting, and requiring him throughout and in every particular plainly to make the fact appear against the constant pressure of the presumption of its validity.

4. **Case in Judgment—Presumption.**—Dow, residing in Alabama, married and had three children. He left there and came to Texas as early as 1833. He married again in Texas—date not shown. He served three months as a volunteer in the Texas Army in 1836, for which service a bounty of 320 acres was granted. He died in 1838, 1839, or 1840—his second wife surviving, as also a daughter of the marriage. After the widow's death the daughter sold the land located under her father's bounty warrant. Suit was brought for the land against her vendee by the three children of the first marriage. It did not appear when the first wife died, or that they had been divorced. It did appear that she married again in Alabama and bore three or four children to her second husband. *Held:*

1. In support of the legality of Dow's marriage in Texas it will be presumed that his first wife was dead or had been divorced before such marriage.

2. The land was community property, it not being shown otherwise, and at his death it belonged one-half to his widow and the other half among his four children.

3. The defendant claiming under the daughter of the second marriage owns five-eighths of the land; the three plaintiffs each own one-eighth.

5. **Practice in Supreme Court.**—In the trial court two daughters of the first marriage recovered one-half of the land, their brother nothing, and the defendant one-half. The brother appealed, making appeal bond only to the defendant. The defendant, although receiving less than its vendor was entitled to, did not complain. The appellant showed that he was entitled to one-eighth of the land, and his sisters had recovered more than they owned. *Held*, that not having made his coplaintiffs parties in the appeal, the appellant could not have remedy against the defendant for the land improperly adjudged the plaintiffs.

Appeal from Archer.   Tried below before Hon. P. M. Stine.
No statement is necessary.

*F. E. Dycus*, for appellant.—1. Where land is granted as a bounty to a Texas soldier in 1836, it is his separate property, and descends at

his death to his heirs.   Ames v. Hubby, 49 Texas, 705; Bacon v. Russell, 57 Texas, 409.

2.   If a bounty warrant granted for services rendered Texas in the war of 1836 is the community property of the original grantee and his wife, then in case he has been married more than one time, the woman who occupies the relation of wife at the date the services were rendered would take to the exclusion of a second wife.   Carroll v. Carroll, 20 Texas, 732; Babb v. Carroll, 21 Texas, 765.

3.   One of several heirs can not convey title to the whole tract of land so that his vendee can hold under the statute of limitation of three years as against the coheirs who are cotenants in the ownership.   Veramendi v. Hutchins, 48 Texas, 531.

4.   In order to make the statute of limitation of three years available as a defense to an action of trespass to try title, the possession shown must fully meet the requirement of the law so as to be actual, adverse, visible, exclusive, and uninterrupted; and where it is shown that possession has been held by the defendant and others as a common inside of a large inclosure in which other lands are embraced, some of the parties in possession claiming adversely to defendants, the defense of limitation is not made out.   Murphy v. Welder, 58 Texas, 235; Richards v. Smith, 67 Texas, 610; Sellman v. Hardin, 58 Texas, 86.

No brief for appellant reached the Reporter.

GAINES, ASSOCIATE JUSTICE.—This suit was brought originally by Mary C. Latham, joined by her husband and Eliza R. Weatherford, to recover of the appellee, a corporation known as the Wichita Land and Cattle Company, 320 acres of land, patented by virtue of a bounty warrant issued to L. D. Nixon.   Subsequently the plaintiffs filed an amended petition, in which appellant joined them as a party plaintiff.

The defendant pleaded not guilty and the statutes of limitation.   It also vouched in J. P. Hart as its warrantor, and prayed judgment over against him in the event of a recovery by plaintiffs.

The case was tried before the court without a jury, and a judgment was rendered in favor of Mrs. Latham and Mrs. Weatherford for one-half the land, and that Nixon take nothing, and for defendant the cattle company for the other half as against the plaintiffs, and against Hart for one-half the purchase money paid him by it.   Nixon has alone appealed, making his appeal bond payable to the defendant company only.

The evidence disclosed, that L. D. Nixon served in the army of Texas for three months, extending from January 27 to April 27, 1836, and that he was honorably discharged.   The certificate by virtue of which the land in controversy was located and patented was issued in his name, as the bounty for that service, on the 23d of May, 1855.   There

seems, however, to be but little doubt that he had then been dead many years. He emigrated to Texas in 1833, or before that time, from the State of Alabama, where he left a wife and three children. These children, to-wit, Mrs. Latham, Mrs. Weatherford, and T. L. Nixon, were the plaintiffs in this suit in the court below. This wife and children he never brought to Texas. After his immigration to this State he married again, and by his second wife left a daughter, under whom the defendant claims title to the disputed premises. Several witnesses testified as to the marriage of L. D. Nixon with the mother of the plaintiffs, and that plaintiffs were the sole issue of that marriage. None of them, however, ever saw him after he came to Texas. His marriage in Texas was also proved, but none of the witnesses who testified to his career in this State knew anything of his previous history. But the evidence leaves no doubt that the L. D. Nixon of Alabama was the same man who was known by that name in Texas. He was known as Lorenzo Dow Nixon in both States. After he left Alabama his first wife married again. The date of that marriage is not given. Nor do we know the time at which he married the second wife in Texas. It was proved, however, that his second wife survived him. The time of his death is not definitely fixed, but it seems pretty well established that he died either in the year 1838, 1839, or 1840.

No conclusions of law or fact appear in the record, and therefore what view the court took of the evidence is a matter of conjecture. It would seem, however, that it was considered that the certificate was the separate property of L. D. Nixon, and that all his children—the three by the first wife and the one by the second—were legitimate; and that the appellant, who did not join in the suit until some two years after it was instituted by his coplaintiffs, was barred by limitation. If such were the facts, Mrs. Latham and Mrs. Weatherford would each be entitled to one-fourth of the land, and the defendant company to one-fourth derived through the child of the second marriage, and to another fourth acquired by limitation as against appellant.

Appellant submits, that the certificate was the separate property of L. D. Nixon, and that his suit was not barred by limitation, and that therefore he should have received one-fourth of the land. The difficulty of determining whether the certificate should be treated as community or separate property grows not out of the law of the case, but out of the uncertainty as to the facts. The face of the certificate indicates that it was granted by virtue of the tenth section of the ordinance of December 5, 1835, passed at San Felipe. That section offered a bounty of 320 acres of land for volunteers in the auxiliary corps for three months service. Pasch. Dig., art. 4039. The right acquired by virtue of that ordinance was clearly acquired by onerous title, and belonged to the volunteer and his wife as common property, provided he had a wife at the time of the acquisition. The donations granted to

those who participated in the battle of San Jacinto and to others by the Act of December 31, 1836, were not in discharge of any legal obligation, but were a gratuitous bounty extended by the republic in grateful recognition for services which had already been rendered. The latter are properly held the separate property of the grantees. Ames v. Hubby, 49 Texas, 705.

We have no direct evidence whether Nixon had married the second wife or not àt the time he rendered the military service which entitled him to the land; and hence we must resort to presumptions in order to determine whether or not the right acquired was community property, and if so, of which marriage. The statute provides, "that all the effects which the husband and wife may possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved." Rev. Stats., art. 2853; Pasch. Dig., art. 4638. The evidence does show that the second wife of Nixon survived him; and therefore if they were lawfully married the presumption is that the right in question belonged to their community estate; and the burden rests upon those who claim the contrary to rebut that presumption by satisfactory evidence that their marriage took place after the services were rendered for which the certificate was granted. But were they lawfully married? The testimony does not show when the first wife died; and upon an ordinary question the evidence may admit of the inference that she was living at the time of the second marriage. The only fact to indicate the date of her death is, that she married a second time after her husband left for Texas, and bore four children to her second husband. The time at which Nixon came to Texas is not made definite by the testimony. It may have been as early as 1827 or as late as 1834; so that it was possible for his wife to have married again and to have borne four children and to have died before he enlisted in the Texas army. The presumption of the legality of the marriage should in such a case prevail against the presumption of life. "Every intendment of law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of the proof upon the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. The strength of the presumption increases with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community that all intercourse between the sexes in form matrimonial should be such in fact, the law when administered by enlightened judges seizes upon all probabilities and presses into its service all things·else which can help it in each particular case to sustain the marriage and repel the conclusion of unlawful commerce." 1 Bish. on

Mar. and Div., 6 ed., sec. 459. Such is the emphatic language of an able and discriminating commentator. The decisions of our courts are to the same effect, and some of the cases are strikingly in point. Carroll v. Carroll, 20 Texas, 732; Lockhart v. White, 18 Texas, 102; Yates v. Houston, 3 Texas, 433.

But even if it had been shown that the first wife was living at the time of the second marriage, we should be constrained to presume under the facts of this case that there was a divorce. This presumption is reinforced by the fact, that after the separation in Alabama each of the parties contracted a second marriage. Neither the fact that one of the plaintiffs testified, that she never heard that her father and mother were divorced, nor that another witness swore that the first wife believed her husband to be dead at the time of her second marriage, ought to prevail against a presumption operating with such constraining force and supported by such strong considerations of public policy. Hull v. Rawls, 27 Miss., 41; Carroll v. Carroll, supra.

We conclude, therefore, that it should be held under the evidence in this case, that Nixon and his second wife were legally married; and that she being alive at the time of his death, in order to show that the right evidenced by the certificate by virtue of which the land in controversy was located and patented did not belong to them in common, it was incumbent upon the plaintiffs to prove the facts which would have made it his separate property. This they failed to do, and the land must be held the community property of Nixon and the second wife. These considerations lead to the conclusion that each of his four children was legitimate; that upon the death of the second wife her heir inherited from her one-half in the right to the bounty of 320 acres of land, having previously inherited from him one-eighth, and that plaintiffs inherited from him one-eighth each. The defendant having acquired through inheritance and by conveyance the title of the heir of the second wife, was entitled to hold five-eights of the land in con troversy without reference to the statute of limitations. It follows, that the defendant has recovered less than it had the right to hold, and that the plaintiffs Mrs. Latham and Mrs. Weatherford had judgment for more than they had the right to recover. The defendant corporation has not complained of the judgment, and the appellant has made it only a party to his appeal. Had he made his coplaintiffs appellees, he would have had a right, unless barred by limitation, to have the judgment reversed and one-eight of the premises in controversy adjudged to him at the expense of the part adjudged to them. But in this appeal their rights can not be affected by any judgment rendered in this court. Can the appellant leave the judgment in full force as to them and recover his interest against a defendant who has been adjudged to hold less than it had a lawful right to claim? We think not.

The view we take of the case renders it unnecessary to discuss the questions presented upon the statute of limitations.

The judgment is affirmed.

*Affirmed.*

Delivered April 22, 1892.

A motion for rehearing was refused.