ADAMS et al. v. WM. CAMERON & CO., Inc., et al.

(Court of Civil Appeals of Texas. Texarkana Nov. 20, 1913.)

1. MARRIAGE (§ 40*)—PRESUMPTIONS.

While persons seeking to trace their title to land through a marriage of the former owner have the burden of proving a marriage, it is presumed that the marriage was valid, and the burden of proof is upon those contesting its validity; the law presuming morality and innocence rather than their opposites.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 58–69, 79; Dec. Dig. § 40.*]

2. MARRIAGE (§ 52*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

While there is a presumption in favor of the validity of a marriage, that presumption is not conclusive, and hence, where there is testimony tending to rebut the presumption, an instruction on the presumption is properly refused; the whole matter being for the jury.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 91; Dec. Dig. § 52.*]

3. HUSBAND AND WIFE (§ 267*)—SALE OF COMMUNITY ESTATE BY WIFE.

Where a husband deserts his wife, she may sell the community estate to provide necessaries for herself, even though she has no minor children.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 929–938; Dec. Dig. § 267.*]

4. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—NECESSITY.

Where plaintiffs claimed as the purchasers of a community estate from the wife, the impropriety of the charge, in making her right to sell the land to provide necessaries after the husband's desertion contingent upon her having minor children to support, will not authorize a reversal, where the error was not assigned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

The refusal of a requested charge covered by the charges given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

A requested charge having no basis in the evidence should be refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

7. TRESPASS TO TRY TITLE (§ 35*)—EFFECT—ADMISSIBILITY OF EVIDENCE.

In trespass to try title, where defendants stipulated that plaintiffs held whatever title John E. Adams had at his death, and it appeared

that he died in 1870, evidence tending to show the acquisition of an adverse title thereafter is inadmissible.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

8. BASTARDS (§ 47*)—HEARSAY.

In trespass to try title, where plaintiffs claimed as the purchasers of a community estate from the wife, and defendants contested the validity of the marriage, a witness cannot testify that he heard his father, the alleged husband, say that he fell out with his first wife, and took the vendor of the community estate and left the country with her, such evidence being pure hearsay.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 125–137; Dec. Dig. § 47.*]

9. EVIDENCE (§ 317*)—ESTABLISHMENT.

In trespass to try title, plaintiffs claimed the land as purchasers from the wife of the owner, and defendants contended that there was never any legal marriage. Held, that evidence of subsequent declarations by the owner that he took the woman, who sold the land, and left the country with her, deserting his first wife, is not competent to show that there was no marriage.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

Appeal from District Court, Trinity County; S. W. Dean, Judge.

Consolidated actions by A. J. Adams and others against Wm. Cameron & Co., Incorporated, and others and against R. L. Glover and others. From the judgment, plaintiffs appeal, and the first-named defendants cross-appeal. Reversed and remanded.

A. J. Adams and others, heirs of John E. Adams, deceased, by a statutory suit of trespass to try title against Wm. Cameron & Co., Inc., C. L. Threadgill, B. A. Platt, and A. A. Allen, appellees, and C. C. Adams and others, and another suit of the same nature against R. L. Glover and others, sought to recover the J. B. Hartin survey of 640 acres of land in Trinity county. The two suits were consolidated. A trial of the consolidated suit resulted in a judgment as follows, so far as it needs to be stated: In favor of C. C. Adams for costs, on his disclaimer of any claim of an interest in or title to any part of the land; in favor of appellants against Wm. Cameron & Co., Inc., on their disclaimer, for all except 206.7 acres of the land; in favor of appellants against Polly Johnson, on her disclaimer, for all except 50 acres, and in her favor for the 50 acres; in favor of appellants against R. L. Glover, on his disclaimer, for all the land except 98 acres, and in his favor for the 98 acres; in favor of appellants against S. W. Magee, on his disclaimer, for all the land except 103 acres, and in his favor for the 103 acres; in favor of appellants against A. J. Walker and Azeline Walker, on their disclaimer, for all the land except two acres, and in their favor for the two acres; in favor of appellants against C. L. Threadgill, on his disclaimer, for all the land except 40 acres; in favor of appellants against B. A. Platt, on his disclaimer, for all

the land except 29⅔ acres; in favor of appellants against Wm. Cameron & Co., Inc., for one-half of the 206.7 acres mentioned, and in their favor for the other one-half thereof; in favor of appellants against C. L. Threadgill for one-half the 40 acres claimed by him, and in his favor for the other one-half thereof; in favor of appellants against B. A. Platt for one-half the 29⅔ acres claimed by him, and in his favor for the other one-half thereof; and in favor of appellants against all the other parties defendant, on whom service was had, for all the land.

The parties to the appeal as appellants are said A. J. Adams and others, plaintiffs in the court below, and as appellees said Wm. Cameron & Co., Inc., C. L. Threadgill, A. A. Allen, and B. A. Platt, defendants in that court.

From agreements of the parties and testimony heard at the trial it appeared that Solomon Adams, also known as Solomon Stone, in 1818, in Tennessee, married Vicey McIlhaney, by whom he had three children. In 1824 or 1825 he abandoned his said wife and their children, leaving them in Tennessee, and going with a woman named Frances Schafer to Alabama. As explanatory of the conduct of said Solomon Adams in so abandoning his wife, appellees were permitted to prove by the witnesses C. C. Adams and J. W. Upton, over appellants' objection, which is assigned as error, that Solomon Adams after he married Matilda Waters, as hereinafter stated, and his wife Vicey after she married W. B. Bowen, as hereinafter stated, declared in effect that Frances Schafer was a hired girl in their family, and that Solomon Adams became offended at his wife and thereupon deserted her and left with Frances for Alabama. What, if any, relation Solomon Adams and Frances Schafer thereafterwards, and before 1837, bore to each other does not appear from the record. But it does appear that on November 11, 1837, they, as husband and wife, in Dallas county, Ala., by their deed of that date, in consideration of $11,-380 paid to them, conveyed a tract of land in said Dallas county to one John Heard. According to the certificate of an officer of said Dallas county, attached to the deed, the execution thereof was acknowledged before him by said Frances on November 11, 1837. In the certificate Frances is described as the wife of Solomon Adams, and it is stated therein that as his wife she acknowledged the execution of the deed, after she had been examined by the officer with reference thereto, apart from her husband. After the execution of this deed, during said year 1837, Solomon Adams, with Frances as his wife, came to Houston county, Tex., where they lived together as husband and wife until 1856. They had six or more children born to them, among the number being said John E. Adams, deceased. During the time they so lived together, they claimed and were reput-

ed to be husband and wife, and were recognized as such by all their neighbors and acquaintances. In 1856 Solomon Adams killed a man named Tyler, in Trinity county. A short time thereafterwards, to avoid arrest and trial for the homicide, it seems, he abandoned his wife and children by Frances, leaving the state and going to Virginia, where, on October 27, 1857, he married Matilda Waters, by whom he had three children. After Solomon Adams abandoned his wife Vicey, and while he was living in Texas with his wife Frances, to wit, on December 6, 1841, he acquired by purchase the certificate by virtue of which the land in controversy was surveyed. He never returned to Texas during the lifetime of his said wife Frances, but for several years lived with his wife Matilda in a community in Arkansas, where his former wife Vicey lived with said Bowen as her husband, by whom she had several children. It was shown that Bowen abandoned a wife and children he had by her in Tennessee, and, accompanied by said Vicey, moved to Arkansas; but when this occurred was not shown. After Solomon Adams had abandoned her, as stated, and while he was living out of this state with Matilda as his wife, to wit, on October 29, 1866, Frances, by her deed of that date, for a consideration as recited therein of $500 paid to her and for love and affection she had for him, conveyed the land in controversy to appellants' father, said John E. Adams, who, on August 5, 1870, died intestate. It was shown that Solomon Adams, when he left Texas after killing Tyler, was in debt, and that his son, said John E. Adams, paid a part, if not all, of his indebtedness; and it was further shown that said John E. Adams during his father's absence from the state furnished to his mother, said Frances, supplies needed by her to live on. It was agreed by the parties that appellants "held whatever title to the land in controversy that John E. Adams and his wife, Matilda Adams, had at the time of the death of John E. Adams." It was further agreed that Solomon Adams died intestate in or about the year 1873; that his wife Vicey died intestate about the year 1870; that his wife Frances died intestate about said year 1870; that his wife Matilda died intestate "in or prior to the year 1897"; and that defendants held the title, if any they had, to the land of the children of Solomon Adams by his marriage with Vicey McIlhaney and Matilda Waters. It was further agreed that the "deed records, court records, and marriage records of Warren county, Tenn., where Solomon Adams and his wife Vicey lived, Trinity and Houston counties, Tex., where he and his wife Frances lived after they came to Texas, and Madison county, Ark., where his wife Vicey lived with Bowen after they left Tennessee, were destroyed by fire in or about the year 1870; and that the marriage records of Dallas county, Ala., where Solomon Adams and his wife Frances, it seems, lived before they came to Texas, were lost or destroyed in or about the year 1862.

Crow & Philips, of Groveton, for appellants. Sleeper, Boynton & Kendall, of Waco, and J. A. Platt, of Groveton, for appellees.

WILLSON, C. J. (after stating the facts as above). On the case made by the facts recited, the court told the jury there were three ways in which the existence of a marriage might be established: "First," he said, "by proof of a ceremonial marriage under the laws of the state in which such marriage is contracted; second, by family history; third, by proof that the parties lived together as husband and wife and held themselves out as such and were reputed to be husband and wife." He then told the jury that "when a marriage is once shown to have been contracted between parties, same is presumed to continue until same is dissolved by the death of one of the parties or by a decree of divorce entered by a court of competent jurisdiction." He then instructed the jury to find for appellants for all the land, if they believed "that subsequent to the time of their marriage the said Solomon Adams and his wife Vicey were divorced by a court of competent jurisdiction, and that thereafter Solomon Adams and Frances were married," and if they believed "that the said Frances Adams sold and deeded the land to J. E. Adams to pay the community debts of herself and Solomon Adams, or to provide necessities for herself and her minor children"; and to find for appellants for an undivided one-half of the land if they failed to find "that the said Solomon Adams and Vicey Adams were divorced, and that thereafter the said Frances Adams and Solomon Adams were lawfully married," yet believed "that the said Frances Adams in good faith believed that she was the wife of Solomon Adams, and that together they acquired the property in controversy in this suit, and that the said Solomon Adams abandoned said Frances, and thereafter she sold the property." The verdict returned by the jury for only one-half of the land indicates they found that Solomon Adams was never divorced for his wife Vicey, and therefore that Solomon Adams and Frances Schafer were never lawfully married. On the issues as to whether Solomon Adams was divorced from his wife Vicey or not, and as to whether he married Frances Schafer or not, the court instructed the jury that the burden was on appellants to show by a preponderance of the evidence "that such a decree of divorce was entered by a court of competent jurisdiction, and that thereafter such marriage was contracted between Solomon and Frances Adams," and refused a special charge requested by appellants as follows: "You are instructed that when a marriage has been shown in evidence, whether regular

or irregular, and whatever the form of proofs, the law raises a presumption of its legality, not only casting the burden of proof upon the party asserting its invalidity, but requiring him throughout in every particular plainly to make the fact appear that such marriage is illegal and void. The strength of the presumption of the legality of a marriage increases with the lapse of time through which the parties are cohabiting as husband and wife. Now, in this connection, you are instructed that if you find from the evidence that a marriage between Solomon and Frances Adams, prior to December 6, 1841, has been proved by any of the methods of proof which the law recognizes as set out for your guidance in the court's general charge, then the law presumes the legality of said marriage, and the burden is upon the defendants, who in this case are attacking it, to establish their contention by clear evidence. This they may do by showing that Solomon Adams, one of the contracting parties, if such a marriage was consummated, was under the continuing disability of a previous valid marriage; but, unless they so show, the law will presume that such disability was terminated by divorce, and you will find in favor of the validity of the marriage."

[1] The action of the trial court in instructing the jury that the burden was on appellants to prove that Solomon Adams was divorced from his first wife before he married Frances Schafer is complained of as erroneous. The contention must be sustained. The burden was on appellants to prove a marriage between Solomon and Frances, but not to prove that such marriage was a valid one. A presumption that the marriage was valid would arise from proof that it was contracted, and the burden of proving to the contrary would be on appellees. This they might do by showing that Solomon had not been divorced from his first wife at the time he married Frances. The rule is a well-established one, and is based on the principle that the law will presume morality and innocence rather than immorality and guilt. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560; Wingo v. Rudder, 120 S. W. 1076; Carroll v. Carroll, 20 Tex. 741; Ross v. Sparks, 79 N. J. Eq. 649, 83 Atl. 1118; Gamble v. Rucker, 124 Tenn. 415, 137 S. W. 499; McCord v. McCord, 13 Ariz. 377, 114 Pac. 968; Lyon v. Lash, 79 Kan. 342, 99 Pac. 598; Parsons v. Grand Lodge, 108 Iowa, 6, 78 N. W. 676; 19 A. & E. Enc. Law, pp. 1208, 1209.

[2] We do not think the court erred when he refused the special charge set out in the statement, to the effect that the burden was on appellees to prove the invalidity of the marriage, if there was one, existing between Solomon and Frances at the time Solomon acquired title to the land in controversy. While it is true that, to sustain the validity of a marriage shown to have been contracted, a presumption will be indulged that one of the spouses was divorced from a spouse living at the time it was contracted, the presumption is not a conclusive one. "If," said the court in Stooksberry v. Swan (Sup.) 22 S. W. 967, "the law declares the weight that shall be given to certain evidence, a court may so inform a jury; but, if that may be overthrown by other evidence, then it becomes the duty of the court, if evidence tending to a contrary conclusion be introduced, to leave the whole question of fact to the jury." And see Hammond v. Hammond, 43 Tex. Civ. App. 284, 94 S. W. 1068, where the court, in disposing of a contention that the jury should have been instructed that it was a presumption of law that the party had been divorced from his first wife, shown to have been alive when the second marriage was contracted, said: "Whatever might be the right of a jury to indulge such presumption as a matter of fact, we cannot sanction the contention that the presumption exists as a matter of law."

[3, 4] As noted in the statement above, the court in his charge to the jury predicated the right of Frances Adams, if she was lawfully the wife of Solomon Adams, to convey the land to John E. Adams, on the fact that she did so "to pay the community debts of herself and Solomon Adams, or to provide necessities for herself and her minor children." Error is not assigned on this portion of the charge, but it is nevertheless urged that it was erroneous in that it did not recognize a right in Frances Adams, after she had been permanently abandoned by Solomon Adams, to sell the land to provide necessaries for herself, but required the jury also to find that she sold it to provide necessaries for her minor children. It is insisted, and we think correctly, that there was no testimony showing she then had minor children. Undoubtedly the charge in the particular specified, for the reason suggested, was erroneous, but, in the absence of an assignment presenting it, we would not because of the error be warranted in reversing the judgment. But error is assigned on the refusal of the court to give a charge requested, telling the jury if she and Solomon were lawfully married at the time title to the land certificate was acquired, Frances had a right, after he abandoned her, to sell and convey the land to John E. Adams to provide means necessary for her support. On another trial the charge of the court should not be limited as specified, but should be so framed as to require the jury to find in appellants' favor, if they believe Frances and Solomon were lawfully married, that he afterwards permanently abandoned her, and that she sold and conveyed the land to John E. Adams for the purpose of providing means necessary to her support.

[5] By their fourth assignment, appellants complain of the refusal of the court to give to the jury their special charge No. 3. Because we think the phase of the case present-

ed by the charge refused was sufficiently covered by instructions the court gave, this assignment is overruled.

[6] The fifth assignment, in which appellants complain of the action of the court in refusing to give to the jury their special charge No. 4, with reference to a ratification (as claimed) by Solomon Adams of the act of his wife Frances in conveying the land to John E. Adams, also is overruled. We do not think the testimony made a question as to estoppel against Solomon Adams and those claiming under him.

[7] Over appellants' objection thereto on the ground that same was "incompetent, immaterial, and irrelevant," the court permitted appellees to prove by the witness C. C. Adams, whose title they had, that the land in controversy was not occupied by any one until 1881, and to prove that he (witness) and other parties thereafterwards lived on and cultivated portions of it. Appellees justify the action of the court on the ground that the testimony was admissible, in support of their plea setting up title in themselves, under the statute of limitations. But we think their contention cannot be sustained, and that the court erred in admitting the testimony, in view of the agreement on the part of appellees that appellants held "whatever title to the land in controversy that John E. Adams had at the time of the death of John E. Adams," which, it was further agreed, occurred August 5, 1870. In the face of this agreement, appellees did not have a right to show title in themselves by force of the statute of limitations, based on occupancy, etc., of the land subsequent to the date of the death of said John E. Adams. Therefore the sixth and seventh assignments are sustained.

[8, 9] As noted in the statement above, appellees were permitted to prove by the witness C. C. Adams, a son of Solomon Adams by Matilda Adams, his third wife, that, at some time not stated, he heard his father and Vicey Adams, his first wife, declare, with reference to their separation, that "they fell out, and that he (Solomon) taken the girl (Frances Schafer) and left the country and left her." Appellants objected to this testimony and to testimony of the witness Upton to the same general effect, on various grounds, and assign as error the action of the court in admitting same. Without inquiry as to whether other objections urged to it were tenable or not, we think the testimony was inadmissible because hearsay, and not within rules rendering such testimony competent. The only purpose for which there could be even the pretense of a reason for admitting it was to prove the existence of an illicit relationship between Solomon Adams and Frances Schafer in 1824 or 1825. In view of the fact that the record is silent as to what relationship, if any, existed between Solomon and Frances from 1824 or 1825, when they went from Tennessee to Alabama, until December, 1837, when it was shown they joined as husband and wife in the conveyance of land they owned in Dallas county, Ala., a majority of the court think the testimony referred to was wholly without probative force for the purpose indicated, when considered alone, as it must have been; for there was no other testimony which can be said to have tended to make such an issue.

For the errors pointed out the judgment is reversed, and the cause is remanded for a new trial.