## DOCKERY v. BROWN et al.

### No. 4531.

Court of Civil Appeals of Texas. El Paso.

Oct. 9, 1947.

Rehearing Denied Oct. 30, 1947.

E. B. Elfers, of El Paso, for appellant.

Cunningham, Ward & Cunningham, of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from the 41st District Court of El Paso County. The case as presented on this appeal is a controversy between two women over the proceeds of a certificate of life insurance issued under a group policy on the life of E. C. Dockery, each claiming to be the lawful wife of Dockery at the time of his death. The trial was to the Court without a jury and judgment was rendered in favor of appellee, a plaintiff below, from which appellant, a defendant in the trial court, has appealed.

The suit was originally instituted by E. P. Brown, representing himself to be a resident of Kansas City, Missouri, and his wife, Wanda G. Brown, alleged to be a resident of El Paso County, against the Metropolitan Life Insurance Company. The appellant intervened, whereupon the Insurance Company impleaded other parties, tendered the proceeds of the certificate into court and asked the court to determine to whom it belonged. It boiled down to an issue between the appellant, Vera

Marie Dockery, and the appellees, Brown and wife.

For ease and convenience we take the liberty of referring to the women by their first names.

E. C. Dockery, deceased, was an employee of the Southern Pacific Railroad, and was on the date of his death, August 27, 1945, a freight conductor, and a little less than 32 years of age. The record discloses Wanda was his fourth wife and Vera Marie his third. Wanda was a telegraph operator at the time of her marriage to Dockery and worked for the Southern Pacific at a little station just north of El Paso. She relates the story of her marriage to Dockery, briefly as follows: She had seen Dockery at her station when on his runs between El Paso and Carrizozo, N. M., during the week preceding March 1, 1945. She met him and was formally introduced to him at his sister's cafe in El Paso about 8 P.M. March 1, 1945; they ate together and then went to Juarez, Mexico. They returned to El Paso, she thought, about midnight; went to the home of Dockery's brother and woke the brother and his wife up and they went to Las Cruces, N. M., a distance of about 60 miles, she said. "They tried unsucessfully to wake the County Clerk up to get a license and waited until he came to the office next morning and then procured the license and were there married by B. G. Chavez, a Justice of the Peace, on the morning of March 2, 1945. They returned to El Paso and took up their residence at 1314 N. Kansas Street in El Paso where they lived until Dockery's death, except for a period of about one week, a time when she had left him." This was Wanda's second marriage.

Vera Marie was named as the beneficiary in the certificate of insurance, but Wanda claimed the benefits because of the ceremonial marriage just related, and alleged in her petition Vera Marie was not entitled thereto because she had no insurable interest in Dockery at the time of his death. On the trial Wanda introduced the policy; the record of the marriage, and testified briefly to her marriage and rested her case.

Vera Marie introduced as witnesses a brother and sister of E. C. Dockery, deceased, J. C. Orgain, the District Clerk of El Paso County, and testified herself. The brother testified Wanda and E. C. Dockery came to his house about 2 A.M. March 2, intoxicated; went to Las Cruces, were married and returned in that condition. She also introduced documentary evidence of her marriage to Dockery on December 25, 1941, at Elko, Nevada, which the trial court found to have been legally entered into without legal impediment. It developed Dockery had worked for the Southern Pacific from 1937, until some time in the first half of 1941, when he was laid off, whereupon he sought work elsewhere and worked in Salt Lake and in Elko, Nevada. At Elko he met Vera Marie and she knew him about six months prior to their marriage. They returned to El Paso on January 1st, 1942, where he began working for the Southern Pacific again and continued until his death. Dockery and Vera Marie lived the first half of 1942 in two different apartments in El Paso, and in July 1942 took up their residence in a residence at 1314 N. Kansas Street. They accumulated household belongings and lived together on Kansas Street until about the 9th or 10th of October, 1944, when Vera Marie left Dockery on a "trial separation", as she described it, and went to California where her father lived, was ill and died in November 1944. She had some communications with Dockery and his sister until November or December 1944. She never returned to El Paso until Dockery's death. She removed only part of her personal belongings when she left. Dockery continued to live at the Kansas Street address from October, 1944, until his death August 27, 1945. His sister, who was there when Vera Marie left, remained about a month. An Army Lieutenant and his wife lived in the house with Dockery a while, then a Major, his wife and child, until Wanda came March 2, 1945. Thereafter Wanda and Dockery lived there. Dockery at all times after Vera Marie left maintained his residence in El Paso and worked on his runs between El Paso and Carrizozo.

Vera Marie testified she had never remarried; that she had filed no character of action to terminate the marriage relations between herself and Dockery; that she had been served with no citation in any action brought by him and had heard of none having been brought. The District Clerk of El Paso County testified he had searched the records of the District Courts of the County and had found no record of any proceeding of any character brought by Dockery against Vera Marie; that he had kept an accurate and complete index, both direct and reverse, of all such proceedings and both he and his deputy had searched the indexes and found nothing.

The trial court filed findings and conclusions. The findings are consistent with the record and the recitation of the facts above, which are neither disputed nor denied. The trial court concluded there is a strong presumption the last marriage is a valid marriage and that there were no legal impediments thereto; that "the burden was upon those challenging the validity of the last marriage to establish its invalidity by a preponderance of the evidence * * . * and this burden has not been met"; that an examination of the indexes in the office of the District Clerk is not sufficient evidence that no divorce or annulment was filed in El Paso County between Dockery and Vera Marie. He also concluded that those challenging the validity of the last marriage did not establish that the deceased had not become a resident of Carrizozo, N. M., the other end of his run, for a sufficient length of time to have obtained an annulment of the marriage, and that the courts of Nevada where Dockery and Vera Marie were married have jurisdiction to grant an annulment irrespective of the residence of the parties. He concluded: "In giving effect to the validity of the marriage of the deceased, Elmer C. Dockery, and the plaintiff, Wanda G. Brown, we are indulging in the presumption of the validity of such marriage", and that it follows Vera Marie had no insurable interest in the life of the deceased.

It is obvious the trial court was of the opinion the evidence offered by Vera Marie was insufficient to overcome the prima facie case made by Wanda, based on the presumption or inference arising from the ceremonial marriage of Wanda with Dockery, that the prior marriage relation between Dockery and Vera Marie had been dissolved, and that it was incumbent upon Vera Marie to negative every possible dissolution thereof by resort to other jurisdictions other than the residence of Dockery. In this we think he is in error.

██ It has long since been the law that a ceremonial marriage entered into in accordance with legal forms will raise the presumption, or inference of its legality and the dissolution of a former marriage. But this is rebuttable. Nixon et al. v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S.W. 560; Kinney v. Tri State Tel. Co., Tex.Com.App., 222 S.W. 227; Floyd v. Fidelity Union Casualty Co., Tex.Civ. App. 13 S.W.2d 909, and to which might be added many other authorities. But Vera Marie was not required to establish absolutely nor to a moral certainty that her marriage to Dockery had not been dissolved, but the requirements of the law were met if she introduced sufficient evidence, standing alone, to negative such dissolution. Floyd, etc., supra. She was not required to do the unreasonable and look to every jurisdiction where a proceeding might possibly be had, but to look only where such proceedings might reasonably be expected to be had under the law. That was in El Paso County, where Dockery resided. If he desired to resort to a divorce proceeding then the statute required that he institute the suit in the State where he had been a bona fide inhabitant for twelve months and a resident for six months prior to the institution of the suit, Art. 4631, Vernon's Ann.Civ.St. If he sought to annul the marriage, if Vera Marie be a resident of El Paso County, then he was required to bring it in El Paso County, Art. 1995, Vernon's Ann.Civ.St., or if she were a non-resident the venue was likewise in El Paso County, Exception 3, Art. 1995. In the absence of allegation and proof to the contrary the laws of

804

other states are presumed to be the same as ours. The Floyd case, supra. It may be said the holdings in the Floyd case here referred to are expressly approved by the Supreme Court, in the same case, 24 S.W.2d 363.

██ Aside from these considerations it is the considered opinion of this Court the disposition of the case below, based as it is on the inference of a dissolution of the marriage relation between Dockery and Vera Marie, is so contrary to the overwhelming weight of the evidence we are unwilling to permit it to stand.

For the reasons indicated the judgment of the trial court is reversed and the cause is remanded for another trial.