Letha Bethel SIMPSON, Appellant,

v.

Eloise SIMPSON, Appellee.

No. 16357.

Court of Civil Appeals of Texas.

Dallas.

June 19, 1964.

Rehearing Denied July 17, 1964.

Erhard, Cox & Ruebel, Dallas, for appellant.

Carter, Gallagher, Jones & Magee and Ben T. Warder, Jr., Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Letha Bethel Simpson brought this suit to establish and recover her undivided interest in the estate of Charles J. Simpson, deceased. She alleged that she was lawfully married to Charles J. Simpson (hereinafter referred to as decedent) on March 5, 1913 and remained his lawful wife until he died in December 1960. Plaintiff named Eloise Simpson as defendant, alleging that she was a putative wife of Charles J. Simpson at the time of his death, and was in physical possession of the property sought to be recovered by plaintiff. Defendant answered, asserting a general denial as well as affirmative defenses of laches, estoppel, *res judicata,* and limitations. Defendant then filed her motion for summary judgment which plaintiff opposed. The court, based upon supporting affidavits and depositions, sustained defendant's motion for summary judgment and plaintiff brings this appeal.

## FACTS

Marriage, a status said to be of divine origin,[1] is the pedestal around which the

---

1. Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124; L.R.A.1915–E 1; Genesis 2:24.

facts of this case revolve. The historical background of this case covers almost a half century (1913–1960). Affidavits and depositions reveal the following as a chronological history of relevant events relating to appellant.

Appellant married decedent on March 5, 1913 in the State of Arkansas. To this union there was born on August 26, 1914 a male child, Floyd Charles Simpson. In February 1917 decedent left her saying that he was going away to work and would send for her. She never saw him since that time. The first she heard from him was thirty years later, in 1947. Appellant attempted to locate decedent during World War I by communicating with the "War Board" who told her they would try to find decedent but such efforts were apparently fruitless. Appellant was never served with legal papers of any nature with regard to the decedent and appellant did not obtain a divorce or annulment from the decedent at any time prior to decedent's death in 1960. In 1920, having concluded that decedent was dead, appellant married one O'Donnell and lived with him until 1930 when they separated. O'Donnell died in 1941. On December 14, 1941, still under the impression she was a feme sole, appellant entered into a ceremonial marriage with Morrill Adams and continued to live with him, as husband and wife, in the State of Kansas, until this marriage was dissolved by court decree in 1954. In 1947, appellant was advised by her son that decedent was alive, living in Dallas, Texas, and married and had children by said marriage. Appellant, upon learning this information, continued to live with Morrill Adams for a period of seven years at which time she obtained a divorce from him in 1954. Charles J. Simpson died on December 21, 1960 in Dallas, Texas. This action was instituted on August 31, 1961.

Affidavits and depositions reveal the following chronological history of relevant events as to decedent and appellee Eloise Simpson. In 1924, approximately seven years after separating from appellant, decedent married Verda Mae Burton in Los Angeles, California. In applying for this marriage license, decedent certified that this marriage was his first marriage and that he was single, not divorced. Decedent and Verda Mae remained married until July 15, 1950 when she obtained a divorce from decedent. Three children were born to this union. In 1947 decedent located his son, Floyd Charles Simpson, in the State of Kansas, and visited with him in Dallas and elsewhere on several occasions. After the reunion of decedent and his son, Floyd Charles Simpson advised his mother concerning decedent's residence in Dallas, as well as his present marital status. On one occasion during a visit between decedent and his son, decedent stated to Floyd Charles Simpson that he, decedent, had never secured a divorce from appellant. In 1950 Verda Mae obtained a divorce from decedent in Dallas County. In 1950 decedent married appellee and such marriage continued until the date of decedent's death in December 1960. No children were born of this union. The official records of Los Angeles County, California, Denver County, Colorado, Tarrant County, Texas, and Dallas County Texas, the only places in which decedent lived from 1924 until the date of his death in 1960, reflect that decedent never procured an annulment or divorce from appellant.

## OPINION

By her first point on appeal appellant contends that the trial court erred in granting appellee's motion for summary judgment for the reason that the record conclusively shows the existence of a genuine fact issue as to whether the appellant was lawfully married to decedent from 1913 until the date of decedent's death in 1960. By her counter points, appellee contends that the summary judgment was proper because the evidence presented does not overcome the presumption of the validity of the marriage between decedent and appellee. She also contends that the statement of Floyd

Charles Simpson in his affidavit that his father told him in 1948 he had never secured a divorce from his mother, appellant, is not a statement of a fact that would be admissible as evidence as required by Rule 166–A(e), Texas Rules of Civil Procedure.

The institution of marriage is a status, more than a mere contract, and has been defined as the voluntary union for life of one man and one woman as husband and wife, to the exclusion of all others. 38 Tex. Jur.2d, pp. 28–29, Sec. 1; Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124. It has long been the established law of Texas that a ceremonial marriage entered into in accordance with legal forms will raise the presumption, or inference of its legality. One of the strongest presumptions of law is that a marriage, once being shown, is valid. However, as here, on proof of a second marriage by a party to a prior marriage, the question is presented as to whether a presumption of validity will attach to the second marriage. The generally accepted view is that a second marriage will be presumed to be valid and that such presumption is stronger than and overcomes the presumption of continuance of the prior marriage. 38 Tex.Jur.2d, pp. 89–91, Sec. 44; 14 A.L.R. 2d 10–11; Dockery v. Brown, Tex.Civ. App., 209 S.W.2d 801; Texas Employers' Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W. 2d 371; Watson v. Todd, Tex.Civ.App., 322 S.W.2d 422.

However, such a presumption, strong though it may be, is a rebuttable one. Nixon, et al. v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S.W. 560; Kinney v. Tri-State Telephone Co., Tex.Comm. App., 222 S.W. 227; Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W.2d 909. While it has been held that the presumption of validity of a subsequent marriage may be rebutted only by evidence that negatives every possible method by which the prior marriage could have been dissolved (Texas Employers Ins. Ass'n v. Gomez, Tex.Civ.App., 313 S.W.2d 956) it has been ruled, with equal force, that in order to rebut the presumption of legality of the second marriage such need not be established absolutely or to a moral certainty, the plaintiff only being required to introduce sufficient evidence, standing alone, to negative such facts, in which case the weight of the evidence would be for the jury. Hudspeth v. Hudspeth, Tex.Civ. App., 206 S.W.2d 863; Dockery v. Brown, Tex.Civ.App., 209 S.W.2d 801; Woods v. Hardware Mutual Casualty Co., et al., Tex. Civ.App., 141 S.W.2d 972.

The question as to whether the discharge of the lawful presumption of the validity of the second marriage, as opposed to the first, is a question of law or one of fact, was before the court in Adams v. Wm. Cameron & Co., Tex.Civ.App., 161 S.W. 417 and the court utilized this significant language:

"While it is true that, to sustain the validity of a marriage shown to have been contracted, a presumption will be indulged that one of the spouses was divorced from a spouse living at the time it was contracted, the presumption is not a conclusive one. 'If,' said the court in Stooksberry v. Swan (Sup.) [85 Tex. 563] 22 S.W. [963] 967, 'the law declares the weight that shall be given to certain evidence, a court may so inform a jury; but, if that may be overthrown by other evidence, then it becomes the duty of the court, if evidence tending to a contrary conclusion be introduced, to leave the whole question of fact to the jury.' And see Hammond v. Hammond, 43 Tex.Civ.App. 284, 94 S.W. 1067, 1068, where the court, in disposing of a contention that the jury should have been instructed that it was a presumption of law that the party had been divorced from his first wife, shown to have been alive when the second marriage was contracted, said: 'Whatever might be the right of a jury to indulge such presumption as a matter of fact, we cannot sanction the contention that the

presumption exists as a matter of law.'"

Appellee argues forcefully that the language of the Supreme Court in Texas Employers Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371 to the effect that the presumption is one of the strongest known to law, and is, in itself, evidence, and may even outweigh positive evidence to the contrary, is controlling in this case. With full recognition of the forcefulness of the language utilized by our Supreme Court we must not blind ourselves to the pertinent fact that we are here dealing with a motion for summary judgment and not a trial on the merits, as was the Elder case, supra. The familiar rule has been announced repeatedly that in determining the question of whether or not material issues of fact were raised by the evidence, the court, on review, must review all the evidence in the light most favorable to the petitioners; disregard the conflicts in the testimony; and indulge, in favor of the petitioners, every intendment reasonably deducible from the evidence. Any doubt that exists in the mind of the reviewing court must be resolved in favor of the party against whom the motion was granted. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

■ Applying these rules to the factual situation here presented, we find that while appellant probably did not prove the continued existence of her marital relationship with decedent between 1917 and 1960 to a moral certainty, or beyond any doubt, yet she did introduce some evidence of probative force to negative the fact that her marriage to decedent had not been dissolved by divorce or annulment. While it is true that a jury weighing this evidence might be influenced greatly by the presumption of law relating to the validity of the second marriage, yet that is not the question for our decision. We must decide whether there are *any facts in evidence* in this record which would support appellant's contention and thereby which should have been submitted to a jury or a court, as tri-

ers of fact. In our opinion appellant has satisfied the law by producing sufficient evidence in the form of affidavits and depositions to create an issue of fact as to the dissolution of the prior marriage. As to appellee's counter point relating to the inadmissibility of the affidavit of appellant's son in which he relates that in 1948 his father told him that he, decedent, had never divorced appellant, we believe that such affidavit was admissible evidence. We think it was within the exception to the hearsay rule which permits testimony concerning declarations about pedigree and family history. Texas Law of Evidence, McCormick & Ray, Vol. 2, Sections 1341–1348, pp. 184–194, and cases there cited. Should we be mistaken in this regard, we feel that even without such affidavit appellant has met the burden imposed upon her to present sufficient evidence of probative force to create an issue of fact that should have been submitted to a jury. Appellant's first point is sustained.

■ A defendant's motion for summary judgment may also rest upon a clear demonstration by the record that the cause of action is barred, *as a matter of law,* by affirmative legal defenses such as estoppel, *res judicata,* laches, or limitations. McDonald, Texas Civil Practice, 1962 Cumulative Supplement, Sec. 17.26.1, p. 34, Notes 13–22. Appellant's second and third points contend that appellee's affirmative defense of estoppel has not been established, as a matter of law. Appellee advanced the affirmative defense of estoppel in several forms, namely, equitable estoppel or estoppel *in pais* and judicial estoppel. On the issue of judicial estoppel appellee contends that the record is without dispute that appellant obtained a divorce from Morrill Adams by court decree in the State of Kansas in 1954 and in her petition seeking that decree she made the affirmative statement that she and Morrill Adams were husband and wife and had been legally married in 1941. Such pleading was verified by appellant and the decree of divorce was

granted upon such pleading. Appellee contends that having bound herself by such statement relating to a valid marriage in Kansas she is now estopped from contending in the Texas action that she is the undivorced wife of the decedent. In opposition to this position appellant contends that when she discovered, in 1947, that Charlie Simpson was alive she made no effort to separate from her present husband, Morrill Adams, because she "supposed that Charlie was divorced." Appellant further contends that the burden of proof was upon appellee to support her affirmative legal defense by proof demonstrating same, as a matter of law, and that in this regard appellee has failed. She contends that the necessary elements to establish estoppel are not present in that appellee has failed to prove conclusively that decedent had full knowledge that his marriage to appellant was never dissolved; that there is no proof that appellant had any knowledge of the divorce action between decedent and Verda Mae Simpson; there is no proof that appellant, at the time she obtained a decree of divorce in 1954, had any knowledge that appellant's marriage to decedent had not been dissolved. Moreover, appellant contends that appellee failed to offer any proof that appellee relied in any manner upon any representation by appellant or that appellee sustained any injury, all being necessary elements of estoppel. We agree with appellant.

Our Supreme Court in Long v. Knox, 155 Tex. 581, 291 S.W.2d 292, citing 31 C.J. S. Estoppel § 121, p. 390 [now 31 C.J.S. § 121, p. 649], distinguishes the elements of judicial estoppel as opposed to equitable estoppel, saying:

"The doctrine of judicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. 'Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made.' "

The Supreme Court in discussing mistake as an excuse for prior inconsistent judicial statement, said:

"Knox gained the advantage of preventing the property from being sold. Having thus sworn under oath in this judicial proceeding that his wife owned the property in her separate right he would not be heard now to maintain a contrary position in the *absence of proof that the averment was made inadvertently or by mistake* or by fraud or duress. There was not only no proof of this character but rather the evidence shows conclusively that the affidavit was made voluntarily, with full knowledge of all the facts and with the intention to prevent satisfaction of the judgment against him." (Emphasis supplied.)

In view of these rules, and the record here presented, we do not believe that the defense of judicial estoppel has been established, as a matter of law, so as to justify the granting of the summary judgment. Appellant introduced testimony that she was mistaken in her belief that she was the legal wife of Morrill Adams at the time she filed her divorce suit in Kansas. She believed, at that time, that her former husband had divorced her.

As to the question of equitable estoppel or estoppel *in pais*, the essential elements were discussed by our Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929 wherein the court said:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there

must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' 31 C.J.S. Estoppel § 67, page [402] 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the parties sought to be estopped, it forms no estoppel.' Id. [31] C.J.S. [Estoppel] § 77, page [456] 282, et seq.

"We do not believe all the essential elements of estoppel are established by the record as presented to the court on the motion for summary judgment, and that a fact question was raised as to the estoppel."

Here, likewise, fact issues are presented on the issue of equitable estoppel. The record is silent as to any false representation appellant made upon which appellee relied. Admittedly appellant knew, at the time she obtained her divorce from Adams in 1954, that Simpson was alive and living in Dallas. Even so, there is no evidence, or at least a fact issue is presented, as to whether appellant had knowledge that decedent was her lawful husband during that period. There is no proof that appellant had knowledge of any kind or nature of the divorce action between Verda Mae Simpson and decedent. Appellant presents a factual situation in her contention that

she relied upon a mistaken belief that her first husband had divorced her many years ago. We do not rule upon issues of fact. We merely hold that issues of fact to support the affirmative defense of equitable estoppel are present and which should have been submitted to a trier of fact for determination. Appellant's second and third points are sustained.

By her fourth and fifth points appellant contends that the record conclusively shows the existence of a genuine issue of fact as to appellee's defense of laches. Appellant says that since appellee offered no proof either of unreasonable delay or injury to appellee caused by such alleged delay that the defense is not established, as a matter of law. The defense of laches presents more than a question of mere delay. Such delay must work a disadvantage to another. 35 Tex.Jur.2d, Sec. 10, p. 470. Moreover, whether a person has been guilty of unreasonable delay in seeking to protest and enforce his rights is ordinarily a question of fact. 35 Tex. Jur.2d Sec. 16, p. 475. Appellee contends that appellant having discovered in 1947 the decedent's whereabouts she was immediately confronted with an obligation to prosecute her claim for an interest in his property and that, having delayed such action until 1961, she is, as a matter of law, guilty of laches. This action is against appellee individually and not in her representative capacity, and there is no evidence of injury to appellee caused by the alleged unreasonable delay. Furthermore, there is a factual dispute presented by appellant's deposition to the effect that she proceeded under the mistaken idea and belief that decedent had divorced her. The issue was one for a jury. Appellant's fourth and fifth points are sustained.

In her sixth and seventh points appellant contends that the record conclusively shows the existence of a genuine issue of fact as to appellee's defense of *res judicata*. Appellee, in her pleadings, alleged the defense of *res judicata* arising

from the divorce decree in the year 1950 in the case of Verda Mae Simpson v. Charles J. Simpson and also *res judicata* arising from the divorce suit in 1954 styled Morrill Adams v. Letha Adams in the Kansas court. Appellant was not a party to the first proceeding. Appellee was not a party to the second named proceeding. The decision of the court in Verda Mae Simpson v. Charles J. Simpson was to the effect that Verda Mae Simpson was entitled to a divorce and property settlement. Since appellant was not a party to that proceeding she is not bound by that judgment. The issue in that case was not the marital status between appellant and decedent, but simply the marital status between decedent and another of his wives. The case of Morrill Adams v. Letha Adams, in Kansas, determined certain marital and property rights between Adams and appellant, but did not adjudicate any marital rights or property rights between appellant and decedent.

For a judgment in one suit to bar the bringing of a subsequent one, there must be identity in the thing sued for, identity of the cause of action, identity of persons and parties to the action, and identity of quality in the persons or parties. 34 Tex.Jur. 2d, Sec. 492, p. 546. Appellant's sixth and seventh points are sustained.

By her eighth and ninth points appellant contends that the record demonstrates a fact issue as to appellee's defense of limitations. Specifically, appellee asserted the four year statute of limitations (Art. 5527, Vernon's Ann.Civ.St.) based upon the dates of the divorce decrees in the cases of Verda Mae Simpson v. Charles J. Simpson and Morrill Adams v. Letha Adams, and further, the two (Art. 5526, V.A.C.S.) and four year statutes of limitations based upon appellee's acquisition of the title to property before the filing of this suit. Both limitation statutes provide for the commencement of the action enumerated therein within the prescribed period "after the *cause of action shall have accrued.*" (Emphasis supplied.) As to any possible cause of action against decedent there is an issue of fact presented as to the accrual of such right, appellant contending she was laboring under a mistake of fact as to decedent's marital status. Verda Mae Simpson is not a party to this case and we are not therefore concerned with any possible cause of action which may exist as between her and appellant. As to the instant cause against appellee it was instituted within a year after decedent's death and appellee was charged with detention of that portion of his estate claimed by appellant. We therefore hold the defense of limitation not established as a matter of law. Appellant's eighth and ninth points are sustained.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.